FILED

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TERRELL ELLISTON,**
        Plaintiff,

CASE NO: 8:13cv243|35-78M

vs

**POLK STATE COLLEGE,**

        Defendants.

_____/

### COMPLAINT

COMES NOW, the Plaintiff, **TERRELL ELLISON** (Plaintiff), pro se, files this complaint

against **POLK STATE COLLEGE.** (Defendant), and alleges:

1.      That the jurisdiction of this court arises under Title VII of the Civil Rights Act of 1964

on") and 42 U.S.C. § 1981.

2.      That the Plaintiff is a resident of Winter Haven, Florida.

3.      That the Defendant is incorporated and (or) licensed to do business in the State of

Florida, with its principal located at 999 Ave H NE, Winter Haven, FL 33881.

4.      On October 29, 2012, the U.S. Equal Employment Opportunity Commission issued a

"Notice of Suit Rights," which is attached as **Exhibit A**.

### STATEMENT OF FACTS

5.      The Plaintiff hereby re-alleges and restates paragraphs 1 through 4.

### [ STATE THE FACTS OF YOUR CASE USING AS MANY NUMBERED PARAGRAPHS AS YOU DEEM NECESSARY]

6.      POLK STATE COLLEGE is a postsecondary institution located in Polk County, Florida.

Terrell Elliston (hereinafter referred to as "ELLISTON") began his employment with POLK

STATE COLLEGE as a work study student during the years 2006 and 2007. In June 2010,



ELLISTON was hired by POLK STATE COLLEGE in a part-time, temporary position as an Other Personal Services (OPS) employer. In September 2010, ELLISTON was hired by POLK STATE COLLEGE full-time as the Sports Information Coordinator. In this role, ELLISTON initially reported to the Bing Tyus (hereinafter referred to as "Tyus"), Director of Athletics at POLK STATE COLLEGE.

7.      ELLISTON's role as the Sports Information Coordinator included serving as POLK STATE COLLEGE'S athletics liaison with local, regional and national media; working and traveling with the athletic teams, taking photographs; developing story ideas for the athletic website; compiling statistics; maintaining the social media pages as well as promoting the athletics programs to internal and external audiences. As the Sports Information Coordinator, ELLISTON had very little family or personal time; there was no such thing as an off-seasons and very few "typical days."

8.      In January 2011, POLK STATE COLLEGE created the Department of Communications and Public Affairs in an effort to professionalize its external communications. In the early stages, the department consolidated communications tasks from across POLK STATE COLLEGE's Winter Haven campus, including graphic design, sports and media relations. In January 2011, David Steele III (hereinafter referred to as "Steele") was hired by POLK STATE COLLEGE as the Associate Vice President of Communications and Public Affairs. Following the creation of the department, Steele selected ELLISTON to be part of his "team" and ELLISTON began reporting directly to Steele. During ELLISTON'S employment with POLK STATE COLLEGE, he was a valued employee receiving several complements from his supervisors for his loyalty, commitment and dedication to the work force. ELLISTON performed exceptionally well and received positive performance evolutions from both Steele and Tyus.

9.      The following information is events that transpired preceding ELLISTON'S wrongful

2

termination.

10.     On July 1, 2012, the Polk County Sheriff's Office (hereinafter referred to as "Polk County Sheriff's") and POLK SATE COLLEGE entered into an innovative partnership to intensify security at all POLK STATE COLLEGE locations. POLK STATE COLLEGE also has contracted a private security team that provides security 24 hours a day, 365 days a year on both POLK STATE COLLEGE'S Winter Haven and Lakeland campuses. Captain Bill Mann (hereinafter referred to as "Captain Mann"), a Polk County Sheriff's employee, is also the Director of the Institute of Public Safety at POLK STATE COLLEGE and reporting to Captain Mann is Lieutenant Paul Kurtzweil (hereinafter referred to as "Lieutenant Kurtzweil"), who is a Polk County Sheriff's employee, and oversees security operations at POLK STATE COLLEGE. Lieutenant Kurtzweil's office is housed on POLK STATE COLLEGE'S Lakeland campus. The Institute of Public Safety is adjacent to POLK STATE COLLEGE' S Winter Haven campus. The Institute of Public Safety is a law-enforcement training academy for citizens inspiring to become police officers.

11.     On Friday July 27, 2012, Captain Mann received a call from Major Joe Halman (hereinafter referred to as " Major Halman")  from the Polk County Sheriff's Office advising him of an event on POLK STATE COLLEGE'S campus that weekend, which according to Major Halman's information, was to involve around 150 people. The event which took place on Saturday, July 28, 2012, was a civil rights workshop discussing the unjustly treatment by local law enforcement agencies on residents of the Polk County community and informing residents of their Constitutional Rights. Major Halman is over the Criminal Investigations Division at the Polk County Sheriff's Office, Major Halman does not work for POLK STATE COLLEGE and his job as the head of the Criminal Investigations Division for the Polk County Sheriff's Office does not include establishing, monitoring or coordinating security efforts for events at POLK

STATE COLLEGE. Major Halman informed Captain Mann the Polk County Sheriff's Office

had information that the organizer of the event was Poor & Minority Justice Association

(hereinafter referred to as "PMJA"). PMJA is a civil right organization that speaks out against

police injustice and collects police complaints from residents who have been treated unjustly by

police officers in Polk County. ELLISTON became a member of PMJA in June, 2012. Contrary

to Major Halman's information the organizer of the event was Jesse Peterson, the President of

Students Working for Equal Rights (hereinafter referred to as "SWER"). SWER is a student

organization located on POLK STATE COLLEGE'S Lakeland campus. Saturday's event was

confirmed and placed in POLK STATE COLLEGE'S system by POLK STATE COLLEGE

officials on July 12. Major Halman further told Captain Mann ELLISTON was involved in the

event. ELLISTON was not involved with establishing or coordinating this event however,

ELLISTON did attend the event as it was on ELLISTON'S personal time and was open to the

public. After speaking with Major Halman, Captain Mann asked Lieutenant Kurtzweil whether

he was aware of the event. Apparently, Lieutenant Kurtzweil indicated that he was not aware of

any event scheduled on campus that weekend. Captain Mann requested Lieutenant Kurtzweill

check with security to see whether they had record of the event. Apparently, POLK STATE

COLLEGE'S security is kept well apprised of all scheduled events on campus because in

addition to providing security functions on campus, security is also responsible for locking and

unlocking doors on campus buildings. Lieutenant Kurtzweil requested his assistant check the

POLK STATE COLLEGE'S event schedule on its online portal Genesis, which also indicated

that no community events were scheduled. Henceforth, Major Halman provided his officers with

false information in which Captain Mann and Lieutenant Kurtzweil searched for ELLISTON'S

name or PMJA but failed to find it because ELLISTON or PMJA did not create the event. Not to

mention there are procedures and guidelines in which POLK STATE COLLEGE has established

4

for student organizations planning event other than regular club meetings.

12.     As campus security had no information regarding the event and it was not listed on Genesis, Captain Mann apparently became understandably concerned regarding potential risks. Similar to POLK STATE COLLEGE'S procedures and guidelines for establishing events for student organizations, there are procedures and guidelines for establishing events for non-college users. PMJA nor ELLISTON did not complete paper work per POLK STATE COLLEG'S scheduling and use of facilities procedures. Based on the facts established, PMJA nor ELLISTON had nothing to do with establishing this event. As Captain Mann received information from Major Halman that ELLISTON was involved in the event, Captain Mann went to speak with ELLISTON to find out what information ELLISTON had. Captain Mann initially called ELLISTON on his office phone and asked ELLISTON what he knew about the event. Captain Mann told ELLISTON he was coming over to ELLISTON'S office to see him. ELLISTON expressed to Captain Mann that he would be attending Saturday's event with members of the PMJA and the Dream Defenders. The Dream Defenders is an activist group made up of a network of young adults and college students that focuses on criminal justice issues. At this point and time ELLISTON had no knowledge of SWER or any other civil groups nor did ELLISTON have solid information pertaining to the agenda of Saturday's event. In the conversation with Captain Mann, ELLISTON mentioned he was not sure of the exact time or location of the event. Apparently both Captain Mann and ELLISTON were under the impression the event was taking place on POLK STATE COLLEGE'S Winter Haven campus. ELLISTON told  Captain Mann he could recall at the PMJA meeting that he thought the event ran from 6 p.m. – 1 0 p.m.; once again ELLISTON stated to Captain Mann he was not sure of the exact time. Captain Mann stated the event was not in the system, there were no classes available and no one was assigned to cover the event. ELLISTON expressed to Captain Mann he guessed the

event would not be taking place. ELLISTON also suggested to Captain Mann to cancel the event if the people in charge of establishing the event was not in compliance with the rules and regulations. During our conversation, Captain Mann asked ELLISTON for the document he had rolled up in his hand. Captain Mann never asked ELLISTON if the document related to Saturday's event however, Captain Mann did request to see the document in ELLISTON'S hand. ELLISTON was entitled to his Fourth Amendment Right and did refuse Captain Mann's request to seize the document. Captain Mann did not have a search warrant and ELLISTON did not consent to the seizure and search of the document.

13.     After Captain Mann concluded his conversation with ELLISTON, Captain Mann went over to talk to ELLISTON'S supervisor, Steele. With the door shut, Captain Mann explained to Steele he had received information regarding Saturday's planned event, which the POLK STATE COLLEGE apparently was not aware of. Captain Mann further told Steele ELLISTON had information pertaining to the event which ELLISTON refused to share.

14.     After Captain Mann left the office, Steele called ELLISTON'S office phone and told him to come to his office where Steele questioned ELLISTON one-on-one about Saturday's event with Steele's office door wide open. In an extremely demanding voice, Steele questioned ELLISTON about his role in Saturday's event. ELLISTON informed Steele it has been some police injustice in the community. ELLISTON expressed to Steele he was a member of PMJA. ELLISTON also expressed that the police were doing some horrible thing to members of the community. ELLISTON stated to Steele that PMJA and the Dream Defenders were getting together on Saturday at POLK STATE COLLEGE for an event. ELLISTON expressed to Steele that all he knew was PMJA and the Dream Defenders were getting together for Saturday's event. Just as ELLISTON told Captain Mann, ELLISTON was not sure about everything. In a very demanding voice Steele demanded ELLISTON give Captain Mann the document in his

possession. Now very fearful, ELLISTON expressed to Steele he did not have to give Captain

Mann the document. Steele insisted over and over for ELLISTON to give Captain Mann the

document, each time putting a fear in ELLISTON'S heart. Steele told ELLISTON this would not

be good and Captain Mann would be mad. Steele began to get more aggressive with his tone of

voice to the point where he was bullying ELLISTON. ELLISTON was able to keep his

composure and take his verbal abuse, intimidation, aggressiveness, bullying, harassment, and

unethical actions. Subsequently, ELLISTON declined to give Steele the document. As a result of

Steele actions, he created an unfriendly work environment for ELLISTON. For the final hour of

work ELLISTON sat in his cubical embarrassed, hurt and dismayed.

15.     The POLK STATE COLLEGE Employee Handbook sets forth policies regarding

harassment and standards of conduct in which Steele was in violation. POLK STATE

COLLEGE harassment policy states in relevant part:

- Employers interested in human dignity and protection of their employees are particularly
  concerned about the possibility of employee harassment whether it is sexual, racial,
  ethnic or of some other type. Harassment in any form – verbal, physical or visual – is
  strictly against College policy and will result in corrective action.

16.     According to Procedure 6086 POLK STATE COLLEGE'S defines harassment as:

- Harassment is the creation of an unreasonably hostile or intimidating environment in
  which verbal or physical conduct is likely to interfere significantly with an individual's
  work or education

17.     The College's Employee Handbook set forth violations of standards in which my

supervisor was in violation. They include:

- Threatening, intimidating, coercing, using abusive or vulgar language, or interfering

7

with the performance of the other employees;

- Conduct, which the College feels, reflects adversely on the employee or College.

18.    Later into the evening, Captain Mann called Major Halman. Major Halman had

apparently obtained a copy of the agenda which indicated that Pastor Clayton Cowart

(hereinafter referred to as "Pastor Cowart") was involved in the event and offered his name and

phone number. Neither ELLISTON nor Pastor Cowart were aware of any agenda which outlines

Saturday's event or Pastor Cowart's personal information. Steele called and spoke with Pastor

Cowart, indicating he was from POLK STATE COLLEGE and was trying to find out

information regarding Saturday's event. Pastor Cowart informed Steele he needed to speak with

someone else named Phillip Agnew (hereinafter referred to as "Agnew"). Cowart gave Steele

Agnew's telephone number and Steele called Agnew. Steele informed Agnew that POLK

STATE COLLEGE had no record of the event and in response, Agnew told Steele that his group

Dream Defenders, had gone through a process to schedule the event and filled out paperwork

with Juan Sotomayor (hereinafter referred to as "Sotomayor"), President of the Student

Government Association on POLK STATE COLLEGE'S Lakeland campus. Steele then phoned

Sotomayor, who at first seemed to have no knowledge of the event, but then recalled that he had

referred the Dream Defenders to the President of a student organization, SWER. POLK STATE

COLLEGE'S Vice President for Administration and Chief Financial Officer, Peter Elliott, then

confirmed on Genesis that SWER had in fact booked a room for training. Apparently Steele

learned that SWER training was scheduled for all day Saturday on the Lakeland campus and was

scheduled as a student event, not one involving 150+ members of the public. The information

Steele obtained clearly indicates that Major Halman's information to POLK STATE COLLEGE

was inaccurate.

19.    On Saturday, July 27, 2012, at 9:22 a.m., Steele emailed Captain Mann requesting

Captain Mann to inform him if any from his team was attending the Saturday's event. Captain

Mann confirms Steele's request at 11:23 a.m. Neither Captain Mann nor Steele was present at

Saturday's event. POLK STATE COLLEGE had Michael Linderman, who worked at POLK

STATE COLLEGE'S Lakeland Campus watch over Saturday's event. Linderman was also in

charge of "spying" on the event to see if I attended and to report back what was being discussed

at Saturday's event. Linderman was seen taping Saturday's event on his cell phone. Linderman

has since been fired from POLK STATE COLLEGE.

20.     On Monday, July 30, 2012, Steele emailed Mann requesting a phone conversation.

Captain Mann replied via email to Steele at 11:33 a.m. with information pertaining to Saturday's

event.

21.     On the morning of Monday, July 30, 2012, ELLISTON went to Director of Human

Resources, Jill Hall's (hereinafter referred to as "Hall") to make his harassment complaint

against Steele and to express his displeasure in the way ELLISTON was treated. Robin

Robinson, HR Assistant Employment, informed Hall ELLISTON was waiting to see her. While

waiting to see Hall, Steele happened to walk by Hall's office as ELLITON and Hall were

meeting. Steele entered Hall's office without stopping to address Robinson. Robinson seemed

somewhat surprised as Steele did not address her or request to meet with Hall before he

proceeded to her office. Following the conclusion of Hall and Steele's meeting, Hall apparently

learned ELLISTON was waiting to meet with her. During this meeting with Hall, ELLISTON

expressed concerns as to how Captain Mann obtained his name and associated ELLISTON with

Saturday's event. ELLISTON did express to Hall that he did not have to give him the document

in his possession, which had nothing to do with the event. ELLISTON did state that Steele

bullied and harassed him and he was extremely aggressive when questioning him. ELLISTON

did express to Hall this incident was the worst he felt as an employee. ELLISTON requested

from Hall that he did want an apology from Steele in front of his co-workers and ELLISTON did express that he did hope he would not experience any repercussions as a result him complaining about Steele and the issue that took place on Friday.

22.     On Monday, July 30, 2012, after ELLISTON complained about harassment and how he was mistreated during the incident between Captain Mann and Steele, and himself, Steele and Hall met with ELLISTON on Tuesday, July 31, 2012; Hall and Steele gave ELLISTON a final written warning stating he was allegedly insubordinate and allegedly in violation of POLK STATE COLLEGE'S Employee Handbook.

23.     On the afternoon of August 3, 2012, ELLISTON left work early to handle a personal matter. ELLISTON left at 2:15 p.m. and notified Steele's Administrative Assistant Nixsa DelValle (hereinafter referred to as "DelValle") because Steele's Senior Administrative Assistant Tammy Villanueva (hereinafter referred to as "Villanueva") was out that day. ELLISTON was under the impression that DelValle would relay the message to Steele as it was her job; however she apparently did not relay the message on this particular day.

24.     On Monday, August 6, 2012, ELLISTON received an email from DelValle stating Steele was looking for him and DelValle thought Steele was aware ELLISTON left early on Friday. ELLISTON did email Steele indicating he left early and Steele appeared to not have an issue with ELLISTON leaving early because of his extensive hours during sporting season. Steele did express that ELLISTON should work "normal" working hours that the department keeps. In ELLISTON'S entire time in that department, ELLISTON was never made aware of "normal" working hours the department keeps, thus ELLISTON was unlearned was to what "normal" working hours were for department. It's quite strange that the entire time ELLISTON had been working in this department, ELLISTON was not required to inform Steele of when he arrived or departed work. On the same day, ELLISTON arrived to work at 8:45 a.m., did not take a lunch

break and departed at 4:45 p.m. as he completed his eight hour day. ELLISTON notified

Villanueva and unlike DelValle she emailed Steele notifying him of ELLISTON'S departure.

25.     On August 7, 2012, ELLISTON arrived for work at 8:49 a.m. That afternoon,

ELLISTON received a call from Hall. Hall informed ELLISTON he needed to come to her

office. When ELLISTON arrive to Hall's office, she was with Valparisa Baker, (hereinafter

referred to as "Baker") POLK STATE COLLEGE'S Director of Equity & Diversity. Hall stated

ELLISTON was in violation of POLK STATE COLLEGE'S attendance policy. Hall expressed

to ELLISTON because he was a full-time professional tech employee, he need to work from 8

a.m. - 5 p.m. ELLISTON expressed to Hall he has arrived to working the same time for the past

two years it was never an issue until his incident with Steele. ELLISTON also expressed to Hall

that he works over at least eight hours a day and does not take a lunch break. Hall told

ELLISTON the hours he worked did not matter. Hall stated if ELLISTON didn't take a lunch

break, he would continue working until the job is completed. If that was the case, ELLISTON

would be working 24 hours a day and 365 days a year because it's a never ending job. They

allowed ELLISTON to go back to his office and Hall called him back to the conference room

where Hall, Steele and Baker met with ELLISTON. Steele terminated his employment claiming

that he was late to work which is a ploy. According to POLK STATE COLLEGE'S Employee

Handbook, full-time employees are expected work eight hours a day for five consecutive days.

The POLK STATE COLLEGE'S Employee Handbook also states the College administrative

offices are open 8:00 a.m. – 5 p.m. Monday through Friday. POLK STATE COLLEGE'S

employee attendance policy makes no particular reference or connections specifically stating

full-time employees must arrive to work at 8:00 a.m. and/or depart at 5:00 p.m.

## Count 1 – Retaliation

The Plaintiff received a final written warning after making a verbal claim of harassment against Steele. Subsequently, the Plaintiff was terminated by the defendant, POLK STATE COLLEGE.

## Count 2 – Wrongful Termination

The Plaintiff was terminated for failure to report absences and tardiness. Prior to the incident on July 27, 2012, the Plaintiff had received an outstanding evaluation and had no previous issues with absences or tardiness. The Plaintiff believes he was terminated in retaliation for attending a Civil Rights event on July 28, 2012 and making a verbal claim of harassment against Steele.

## Count 3-Violation of First Amendment Rights

The Plaintiff's was questioned about an event he had no part in planning. Steele inquired to Captain Mann about some from his team attending the Civil Rights event. The Plaintiff had the freedom to attend an event on his person time without having his rights as an American citizen violated.

#.      WHEREFORE, the Plaintiff demands:

A.      Trial by jury.

B.      Judgment against the Defendants for compensatory and punitive damages.

C.      Affirmative Action, as deemed appropriate by the Court.

D.      Injunctive Relief, as deemed appropriate by the Court.

E.      Attorney's fees and costs.

F.      For whatever additional relief as is deemed just and appropriate by this honorable Court.

RESPECTFULLY SUBMITTED:

*Terrell Elliston*

**TERRELL ELLISTON**
3991 Lake Ned Village Circle
Winter Haven, FL. 33884
863-585-4290

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Terrell G. Elliston<br>3991 Lake Ned Village Circle<br>Winter Haven, FL 33884 | From: | Tampa Field Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 511-2012-02324 | Hatto Parra,<br>Investigator | (813) 202-7941 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Georgia M. Marchbanks_          OCT 2 9 2012

| Enclosures(s) | Georgia M. Marchbanks,<br>Director | (Date Mailed) |
|---|---|---|

cc:  **POLK STATE COLLEGE**
C/o Mark E. Levitt
**ALLEN, NORTON & BLUE**
1477 W. Fairbanks Ave, Suite 100
Winter Park, FL 32789-7113

Enclosure with EEOC
Form 161 (11/09)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| | | |
|---|---|---|
| **CHARGE OF DISCRIMINATION** <br> This form is affected by the Privacy Act of 1974. See enclosed Privacy Act <br> Statement and other information before completing this form. | Charge Presented To: <br> ☐ FEPA <br> ☒ EEOC | Agency(ies) Charge No(s): <br><br> 511-2012-02324 |

Florida Commission On Human Relations                                       and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Terrell G. Elliston** | **(646) 240-3055** | **03-29-1986** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3991 Lake Ned Village Circle, Winter Haven, FL 33884** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **POLK STATE COLLEGE** | **500 or More** | **(863) 297-1076** |

| Street Address | City, State and ZIP Code |
|---|---|
| **999 Ave H, North East,  Winter Haven, FL 33881** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

Earliest **07-27-2012**     Latest **08-07-2012**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On July 27, 2012, a sheriff came to me asking for a press release that I had in my possession (the press release was for an event of two Civil Rights organizations that was scheduled to take place on July 28). I explained to the sheriff that unless he has a warrant, under the law, I do not have to give him the press release. The Sheriff, who is also the Director of Public Safety for Respondent, contacted my supervisor, David Steele and my supervisor told me to give the document to the sheriff. I explained to my supervisor that under the law, I do not have to give the document; and the event that I am part of is outside work, and involves my private life. On July 30, 2012, I complained to the HR Director, which she disagreed with everything I said. I explained the HR Director that I felt harassed, and discriminated because of my race, Black, but instead of receiving help; I was retaliated. On July 31, 2012, I was given a final warning (no write ups before) saying that I was insubordinate. On August 7, 2012, I was discharged for allegedly violating the attendance policy, which I believe is a pretext.

I believe I have been discriminated against because of my race, Black and in retaliation for making a protected activity in violation of the Title VII of the Civil Rights Act of 1964, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| **Aug 08, 2012**    *Terrell Elliston* <br> Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |